IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

GLENN ALLEN CHANEY                    )
                                      )
v.                                    )        No. 1:08-0021
                                      )        Judge Wiseman/Bryant
SOCIAL SECURITY ADMINISTRATION        )

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial

review of the final decision of the Social Security Administration ("SSA" or "the

Administration"), through its Commissioner, denying Plaintiff's applications for disability

insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles

II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's

motion for judgment on the administrative record (Docket Entry No. 13), to which Defendant

has responded by filing its own motion for judgment (Docket Entry No. 19). Upon consideration

of these papers and the transcript of the administrative record (Docket Entry No. 5), and for the

reasons given below, the undersigned recommends that Plaintiff's motion be DENIED.

### I.      Introduction

Plaintiff filed his DIB and SSI applications on September 27, 2005, alleging disability

commencing August 20, 2003 due to an injury in his shoulder and pain in his back and knee (Tr.

11, 13). Plaintiff's applications were denied at the initial and reconsideration stages of state

agency review (Tr. 11). Plaintiff thereafter requested a *de novo* hearing before an Administrative

1

Law Judge ("ALJ"). The hearing was held on July 30, 2007 (Tr. 261). After receiving Plaintiff's testimony and closing the record, the ALJ took the case under advisement until September 27, 2007, when he issued a written decision denying Plaintiff's claims to benefits (Tr. 11-18). The decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since August 20, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe combination of impairments: right shoulder rotator cuff tendinitis and status post arthroscopic surgery (right knee) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform medium work (occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds; stand/walk or sit for 6 hours in an 8 hour workday). The claimant is limited to occasional climbing (ramps/stairs and ladders/ropes/scaffolds). He is limited to frequent balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to frequent use of his right upper extremity in his ability to reach in all directions with the exception of overhead reaching. The claimant does not have any limitations in the visual, communicative, or environmental areas.

6. The claimant has worked in  long distance truck driving, which is classified by the Dictionary of Occupational Titles (DOT) as 905.663-014, medium, semi-skilled, factory maintenance (382.664-010, medium, semi-skilled) and delivery driving (299.477-010, medium, unskilled). The claimant is able to perform his past relevant work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as it is actually and generally performed.

7. The claimant has not been under a "disability," as defined in the Social Security Act, from August 20, 2003 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 13, 14, 18)

2

On February 12, 2008, the SSA's Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-6), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence based on the record as a whole, then those findings are conclusive. *Id.*

## II. Review of the Record

### A. Medical Evidence

On August 20, 2003, Plaintiff Chaney injured his right shoulder while working for Penske Logistics. (Tr. 62). He was taken to the Williamson County Emergency Room, and was subsequently referred to orthopaedic specialist, Dr. Randall L. Davidson. *Id.* Dr. Davidson's objective findings revealed rotator cuff tendonitis[1], impingement syndrome[2], and a small labral tear. (Tr. 226). Dr. Davidson restricted Mr. Chaney to "light duty" with limited use of his right arm from August 27, 2003 until December 2003. (Tr. 224-30). In this time, Mr. Chaney underwent a "conservative treatment program," including regular home exercises, physical therapy, medication for his pain and inflammation, and an injection of DepoMedrol and Lidocaine. *Id.* On December 9, 2003, after Dr. Davidson had determined that the conservative treatment had failed, Mr. Chaney underwent arthoscopic surgery on his right shoulder with a subacromial decompression, distal clavicle resection, and SLAP[3] lesion repair. (Tr. 224-25). Mr.

_____

[1]Inflammation of the tendon. 5-S Attorneys' Dictionary of Medicine 3104.

[2] Chronic pressure on the rotator cuff. Damage to the structures of the shoulder is progressive, and may lead to pain, hemorrhage, tendinitis, tendon rupture, or bone spur formation. *Id.*

[3]'SLAP' stands for "superior labral tear from anterior to posterior."

3

Chaney was "placed off work" until January 19, 2004, when Dr. Davidson opined that Mr. Chaney could return to work on light duty with no use of his right arm. (Tr. 223-24). Mr. Chaney remained restricted to light duty with limitations for his shoulder until June 4, 2004. (Tr. 216-24). On July 8, 2004, Mr. Chaney was restricted to "light duty permanent" with no repetitive overhead work. (Tr. 215). Mr. Chaney was "[released] to return to his regular duty" on August 4, 2004. (Tr. 213-14). Dr. Davidson's written restrictions for Mr. Chaney did not change. (Tr. 203-13, 273).

On July 2, 2004, STAR Physical Therapy did a functional capacity evaluation (FCE) on Mr. Chaney, focusing on his right shoulder. (Tr. 133). Finding Mr. Chaney's effort acceptable, the examiner rated his pain profile as low and functional abilities at the medium-heavy physical demand level with maximum lifting/carrying of 92 pounds. *Id.* The examiner found Mr. Chaney to be "relatively strong" in both extremities, but noted that Mr. Chaney may experience shoulder fatigue/soreness at the end of the workday, which "should improve over time." (Tr. 134). STAR Physical Therapy tracked Mr. Chaney's progress for six months in 2004. In July, 2004, Mr. Chaney's physical therapist opined that he was "able to meet job demands." *Id.*

In a deposition taken for purposes of Mr. Chaney's Worker's Compensation claim on March 10, 2005, Dr. Davidson asserted that, medically speaking, he agreed with STAR's FCE. (Tr. 150). As a result of Mr. Chaney's right shoulder injury, Dr. Davidson assigned a 10% impairment rating to Mr. Chaney's upper extremity, and a 6% impairment rating to his body as a whole, in accordance with the AMA Guidelines. (Tr. 149).

Dr. Wheelhouse, who first saw Mr. Chaney on September 27, 2004, stated that he was "basically in agreement" with Dr. Davidson's assessment. (Tr. 158). Dr. Wheelhouse is a board

4

certified orthopaedic surgeon and a fellow of the American Academy of Disability Evaluating Physicians. (Tr. 153-54). Evaluating Mr. Chaney's right shoulder on September 27, 2004, Dr. Wheelhouse assigned a 14% impairment of the right upper extremity, which equals 8% whole person impairment. (Tr. 192-94). Dr. Wheelhouse opined that he agreed with Dr. Davidson's restriction of permanent light duty with no repetitive overhead work for Mr. Chaney's right, nondominant arm. (Tr. 193).

In November 2005, Mr. Chaney first sought medical attention for his knee, hip, and back pain. (Tr. 210). After having an MRI done on Mr. Chaney's knee, Dr. Davidson diagnosed Mr. Chaney with a medial meniscal tear and degenerative arthritis in his right knee, and synovitis[4] of the right SI joint. (Tr. 209). Mr. Chaney underwent arthoscopic surgery on his right knee on March 17, 2006. (Tr. 208). On March 15, 2006, Dr. Davidson had noted that Mr. Chaney was riding horses, and that he should be able to do so again after the surgery. Mr. Chaney continued to see Dr. Davidson for his knee, hip, and back pain throughout 2006. (Tr. 209). On April 19, 2006, Dr. Davidson's examinations revealed a full range of motion in Mr. Chaney's right knee, no joint effusion, and no tenderness. (Tr. 207).

On March 29, 2006, Dr. Alton L. Hunter also examined Mr. Chaney's right knee. (Tr. 173-74). The examination revealed no effusion, erythema, or significant tenderness. (Tr. 174). Dr. Hunter noted that Mr. Chaney had some subtle soft tissue swelling anteriorly and inappropriate mild soreness. *Id.*

On June 7, 2006, after having an X-Ray and an MRI done on Mr. Chaney's thoracic and lumbar spine, Dr. Davidson determined that Mr. Chaney was suffering from multi-level

---

[4] Inflamation of a synovial membrane.

degenerative arthritis in his lumbar spine with a small disc protrusion at T11-12 and facet

hypertrophy[5] and spondylolisthesis[6] at multi-levels. (Tr. 204). Dr. Davidson continued to

recommend physical therapy sessions to Mr. Chaney, but noted that Mr. Chaney was missing

some of his physical therapy sessions because "he [was] traveling back and forth to Missouri[.]"

(Tr. 204). Dr. J. Frederick Wade also examined Mr. Chaney's back on April 17, 2007 and

assessed Mr. Chaney with chronic low back pain secondary to lumbar disk degeneration. (Tr.

199). Dr. Wade noted that Mr. Chaney had no straight leg raise loss, no motor loss, and no

sensory loss, although he was MS positive for joint pain, stiffness, and difficulty walking. Mr.

Chaney was not taking any medication for his back pain. (Tr. 199).

On June 6, 2006, Mr. Chaney was also examined by Dr. Rinehart, a medical consultant

with the Disability Determination Section. (Tr. 175). Dr. Rinehart noted that Mr. Chaney was "a

little slow with ambulation and had a slight limp favoring his right leg." (Tr. 175). Mr. Chaney

was able to bend over and touch his toes. *Id.* On June 15, 2006, Dr. Reeta Misra evaluated Mr.

Chaney's medical records and completed a Physical Residual Functional Capacity Assessment

for Mr. Chaney. (Tr. 176-83). Dr. Misra determined that Mr. Chaney should be able to lift 50

pounds occasionally and 25 pounds frequently. *Id.* She also determined that he should be able to

stand and/or walk and sit with normal breaks for at least 6 hours in an 8 hour workday. *Id.* Dr.

Mistra's only other noted limitations for Mr. Chaney were for reaching overhead, and

---

[5]Enlargement of the facet joint in the spine.

[6]A forward displacement or slipping of a vertebra over its fellow below, but usually slipping of the fifth or last lumbar (loin) vertebra over the body of the sacrum.

occasionally climbing and balancing. *Id.*

On July 18, 2007, Dr. Wheelhouse examined Mr. Chaney for a second time. (Tr. 188-89). Dr. Wheelhouse diagnosed Mr. Chaney with arthralgia in his right knee, and degenerative arthritis and impingement syndrome in his right shoulder. (Tr. 189). This time, Dr. Wheelhouse recommended that Mr. Chaney remain off work until further notice. *Id.* He opined that Mr. Chaney was "unable to return to gainful employment for at least one year and [unable to] perform any significant work activities." *Id.* On July 28, 2007, Dr. Wheelhouse's Treating Source Statement indicated that Mr. Chaney should only occasionally lift 10 pounds and frequently lift less than 10 pounds. (Tr. 184-87). Citing right shoulder pain, knee pain, low back pain, and arthritis as the particular medical findings supporting his assessment, Dr. Wheelhouse opined that Mr. Chaney could stand, walk, or sit for only 2 hours in an 8-hour workday, and that he could never climb, stoop, crouch, kneel, or crawl. *Id.* Dr. Davidson's Treating Source Statement on July 27, 2007 provided for the same stringent limitations. (Tr. 195-98). The only finding that Dr. Davidson included in support of his assessment was that Mr. Chaney had Degenerative Joint Disease in his back. (Tr. 195).

**B.    Vocational Evidence**

On December 30, 2004, Mr. Chaney was evaluated by Dana Stroller, a vocational expert. (Tr. 61-64). After examining the local labor market of Maury County and its surrounding cities, Ms. Stroller determined that Mr. Chaney's right shoulder injury precluded him from 100% of all occupations. (Tr. 63).

The Tennessee Department of Rehabilitation Services also analyzed Mr. Chaney's vocational opportunities. (Tr. 162-69). On January 5, 2006 and July 6, 2006, the examiners

determined that Mr. Chaney's Residual Functional Capacity was "medium," and that his only limitation was for reaching. *Id.*

   **C.    Testimonial Evidence**

At the administrative hearing, Mr. Chaney testified that he is 60 years old and has a high school education with training in welding. (Tr. 263-64). He served in the United States Air Force for four years, obtained the grade E-5, and was honorably discharged. (Tr. 264). Mr. Chaney can read, write, add, and subtract. *Id.* He has a driver's license and he drives. He quit smoking six or seven years ago, drinks occasionally, and has never used illegal drugs. *Id.*

On August 20, 2003, while working at Penske's in the warehouse, Mr. Chaney sustained an on-the-job injury. (Tr. 266, 268). He was off work for about a week, and then he returned to work at light duty until November 3, 2003. *Id.* He had shoulder surgery in 2004 and was placed on restricted duty. *Id.* He could no longer do his duty and was terminated. *Id.* Mr. Chaney asserted that he cannot functionally sustain any type of work due to his knee, hip, and back pain and the residuals of knee and shoulder surgery, as well as medication side effects (Celebrex and Darvocet) which make him drowsy. (Tr. 271, 273). Mr. Chaney was not receiving treatment for his back, shoulder, or knee pain at the time of the administrative hearing. (Tr. 272). He testified that he had not worked since November 2003. (Tr. 276). However, Mr. Chaney had perviously testified that he had not worked since May 2004. (Tr. 270).

Mr. Chaney testified that he started receiving unemployment compensation, but thought it stopped when he received his Worker's Compensation. (Tr. 266). The ALJ pointed out the Court Order, dated May 31, 2005, which showed that Mr. Chaney was receiving unemployment along with Worker's Compensation benefits. (Tr. 266-67). Mr. Chaney then testified that he in

8

fact drew unemployment compensation for twenty-six weeks. (Tr. 269). He has worked as a fork

lift driver, over-the-road truck driver, warehouseman, maintenance worker, and general laborer.

(Tr. 266-68).

## III.    Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether the agency's

findings of fact are supported by substantial evidence in the record and whether the correct legal

standards were applied. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir.

2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(quoting *Cultip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In

determining whether the SSA's factual findings are supported by substantial evidence, this court

must examine the evidence on the record "as a whole," and take into account whatever in the

record detracts from the weight. *Walton v. Comm'r of Soc. Sec.*, 2003 U.S. App. LEXIS 7066, at

*15 (6th Cir. April 11, 2003) (quoting *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)).

Even if the evidence could appear to support a different conclusion, the SSA's decision must

stand if substantial evidence supports the conclusion reached. *Her v. Comm'r of Soc. Sec.*, 203

F.3d 388, 389 (6th Cir. 1999).


### B. Proceedings at the Administrative Level

Under the Social Security Act, a claimant is entitled to receive benefits only if he is

deemed "disabled." 42 U.S.C. §423(d)(1)(A). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable... diagnostic techniques." *Id.* at § 423(d)(3).

In proceedings before the SSA, the claimant's entitlement to benefits is considered under a five-step sequential evaluation process. Under the first two steps, the claimant has the burden of showing that he is not engaging in substantial gainful employment, and that he suffers from a severe impairment. Assuming that the claimant's impairment is not listed in the Regulations, the claimant must then show that his severe impairment prevents him from performing his past relevant work. Upon such a showing, the Agency must produce evidence of other work which the claimant could be expected to perform, considering his age, education, experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing, e.g., *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)). If the claimant meets his burden and the Agency cannot produce evidence of any other work that he could be expected to perform, the ALJ must find the claimant "disabled."

In this case, the parties do not dispute that Mr. Chaney has not been gainfully employed since August 20, 2003, and that Mr. Chaney's knee and shoulder injuries constitute "severe impairments" that are not listed in the Regulations. (Tr. 13, 14). Since the ALJ's evaluation

ended at step four, the only issue on appeal is whether there was "substantial evidence" for the ALJ to decide that Mr. Chaney was capable of returning to his past relevant work, given the medical, vocational, and testimonial evidence on record.

### C. Plaintiff's Statement of Errors

Plaintiff assigns three errors to the ALJ's decision. First, Plaintiff argues that the ALJ erred in not properly deferring to the opinion of Dr. Davidson, Mr. Chaney's treating orthopaedist. (Docket Entry No. 13, at 6). Second, Plaintiff argues that the ALJ erred in not considering the opinion of the Worker's Compensation vocational expert, Dana Stoller. *Id.* at 9-10. Third, Plaintiff argues that the ALJ erred in failing to properly assess Mr. Chaney's credibility. *Id.* at 10. However, the ALJ provided "good reasons" for rejecting Dr. Davidson's treating source statement, and was not required to explicitly address Ms. Stoller's opinion. Because the ALJ also had substantial evidence for his assessment of Mr. Chaney's credibility, the final decision of the SSA should be affirmed.

> 1. Whether the ALJ failed to consider appropriately Dr. Davidson's treating source statement under the Treating Physician Rule.

In disability determinations, the ALJ is typically required to give high deference to the opinion of a treating physician, who may, by his longstanding relationship with the claimant, "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting 20 C.F.R. § 416.927(d)(2)).The weight given to a treating physician's medical opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence on the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Rogers*, 486 F.3d at 242-43. If the opinion is "well-supported by medically acceptable clinical

11

and laboratory diagnostic techniques and is not inconsistent with any other substantial evidence on the case record, then it will be accorded controlling weight." *Rogers*, 486 F.3d at 242 (quoting *Wilson*, 378 F.3d at 544).

If the opinion of a treating physician is not controlling, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating physician. *Id.* In all cases, the ALJ must "give good reasons" for the weight that he gives to the treating source's opinion, which cannot be conclusory and must be "sufficiently specific" both to inform the claimant and to provide for meaningful appellate review. *Id.* at 242-43 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996), and *Wilson*, 378 F.3d at 544).

In this case, neither party disputes that Dr. Davidson was Mr. Chaney's "treating physician." (Docket Entry No. 20, at 6). Further, because the ALJ accorded high deference to Dr. Davison's earlier medical opinions and testimony, Plaintiff does not argue that the ALJ rejected Dr. Davidson's opinions on the whole, but that he rejected, specifically, Dr. Davidson's "treating source statement," dated July 27, 2007. (Tr. 17). However, because the ALJ explained why this statement was inconsistent with both the medical and testimonial evidence of record, the ALJ did not commit reversible error.

The ALJ clearly stated in his opinion that the July 27, 2007 assessment by Dr. Davidson was not given any weight. Tr. 17; *see Rogers*, 486 F.3d at 242 (finding that the ALJ must "make clear" the weight that he accorded to a treating physician's opinion). The ALJ then went on to delineate the reasons for his departure from the normal deference which would have been

12

accorded to the treating physician's opinion. (Tr. 17). First, the ALJ explained that Dr. Davidson's 2007 "treatment source statement" was "inconsistent" with Dr. Davidson's earlier physical assessments. *Id.* Specifically, Dr. Davidson indicated by checking boxes in the July 27, 2007 treating source statement that, due to Mr. Chaney's degenerative joint disease, he would not even be able to sustain sedentary work. *Id.* However, as the ALJ recognized, Dr. Davidson also opined on May 12, 2004 that Mr. Chaney could return to work without restrictions. In a March 2005 deposition, Dr. Davidson agreed with STAR Therapy's assessment that Mr. Chaney could occasionally lift 74 to 100 pounds, frequently lift 23-34 pounds, and had no restrictions for sitting, standing, walking, or driving. *Id.* On July 18, 2005, Dr. Davidson placed Mr. Chaney on a restriction of "no repetitive overhead work," which means no reaching overhead more than ten times in one hour. *Id.* The ALJ expressed concern over this inconsistency at the administrative hearing, where Plaintiff's counsel testified that Dr. Davidson's earlier opinions were based on Plaintiff's shoulder injury alone. (Tr. 267). Because Plaintiff's knee, hip, and back pain did not originate until November 2005, the ALJ asked Plaintiff if he would like to change the alleged onset date. *Id.* Plaintiff declined the ALJ's invitation. *Id.*

Dr. Davidson's July 27, 2007 statement is also inconsistent with his treatment notes, which *do* consider Mr. Chaney's knee, hip, and back problems. Specifically, Dr. Davidson notes in March 2006 that Mr. Chaney was "having no pain," and that he had a full range of motion in his hip. (Tr. 208-09). In April 2006, Dr. Davidson observed that Mr. Chaney's "knee continued to improve," and that he had a full range of motion in his lumbar spine and knee. (Tr. 207). In May 2006, Dr. Davidson observed that Mr. Chaney's lower back was "improving," and that there was improvement in Mr. Chaney's back when he was taking Flexeril. (Tr. 205). Finally,

Dr. Davidson noted in June 7, 2006 that Mr. Chaney was having "minimal pain" that increased with physical activity. (Tr. 204). He observed that Mr. Chaney was missing physical therapy sessions to "drive back and forth to Missouri," and that physical therapy should "make [Mr. Chaney] more functional," and "work on his knee, also." *Id.* The last time on record that Dr. Davidson saw Mr. Chaney for treatment , he described him as "basically stable." (Tr. 203). In fact, Dr. Davidson never modified Mr. Chaney's light duty restriction, but said that he should be back to "riding horses" after his arthoscopic knee surgery. (Tr. 209). Mr. Chaney filled out the "treating source statement" form more than eight months after he last saw Mr. Chaney for treatment. (Tr. 203; 198). In all of his "past" treatment notes and throughout his relationship with Mr. Chaney, Dr. Davidson did not express the level of concern about Mr. Chaney's degenerative joint disease that he suddenly expressed in July 2007, only three days before the administrative hearing. Because there were no new findings of significant changes in the Plaintiff's condition in the intervening months, this evidence supports the ALJ's finding. *See Walton v. Comm'r of Soc. Sec.*, 2003 U.S. App. LEXIS 7066, at *17-19 (finding that the ALJ property rejected the treating physician's later opinion when there was an eight month absence of treatment and no new objective findings of significant changes in plaintiff's condition).

The ALJ also observed that Dr. Davidson's July 2007 statement was inconsistent with other medical evidence. The ALJ reasoned that on March 29, 2006, Dr. Hunter examined Mr. Chaney and "assessed that his right knee revealed no effusion, erythema or significant tenderness[.]" (Tr. 17, 174). "Dr. Rinehart's June 6, 2006 evaluation of the claimant revealed that he was able to bend over and touch his toes. He had about 90 degrees anterior lumbosacral flexion with normal lateral flexion. The right knee had range of motion from 5 degrees through

14

160-170 degrees." (Tr. 17, 175). The ALJ did not indicate that he was giving *more* weight to the opinions of Dr. Hunter and Dr. Rinehart than to Dr. Davidson's opinions, but rightly used the evidence to support a finding of inconsistency. Tr. 17*; see Walton*, 2003 U.S. App. LEXIS 7066, at *22 (finding that other medical evidence of "only mild difficulty squatting," and no "tenderness, erythema, or effusion" supported the ALJ's finding that the treating physician's later opinion was inconsistent with the medical record).

Finally, the ALJ observed that the extent of Mr. Chaney's physical activities, and the fact that he was not taking "any pain medication whatsoever for his alleged knee problems or his alleged back problems," diminished the weight of Dr. Davidson's July 2007 medical source statement. (Tr. 17). Dr. Davidson himself observed that Mr. Chaney was "riding horses" and "traveling back and forth to Missouri" in 2006. (Tr. 204, 209). The ALJ's chief concern was that Mr. Chaney was not even receiving treatment or taking pain medication for his back pain, which is the only "medical evidence" supporting Dr. Davidson's July 2007 opinion. (Tr. 17, 195-98). As the ALJ observed, Mr. Chaney "reports that he gets good response to medications when taken as prescribed and that he has meaningful access to them." (Tr. 16). Taken together, the ALJ's finding that the July 27, 2007 treating source statement was: (1) inconsistent with Dr. Davidson's past assessments, (2) inconsistent with other, consulting physicians' assessments, (3) inconsistent with Plaintiff's level of physical activity, and (4) inconsistent with the fact that Plaintiff was not taking pain medication, counts as sufficient "good reasons" for the weight that he accorded the statement, especially given the ALJ's specific examples of conflicting evidence, and the concern that he expressed at the administrative hearing. *See Thompson v. Astrue*, 2009 U.S. Dist. LEXIS 50070, at 35 (M.D. Tenn. June 11, 2009) (Wiseman, J.) (finding that the ALJ

gave "good reasons" for rejecting the treating physician's medical source statement given that the statement was inconsistent with the same physician's treatment notes and given the plaintiff's "level of independent functioning"). The ALJ did not commit legal error in according no weight to Dr. Davidson's treating source statement, and had substantial evidence for his finding.

The Plaintiff also assigns error to the fact that the ALJ accorded no weight to Dr. Wheelhouses' medical source statement, which is "strikingly similar to Dr. Davidson's." (Docket Entry No. 13, at 5, 8-9). Dr. Wheelhouse, however, is not Mr. Chaney's treating physician, as he only examined Mr. Chaney two times in the relevant five-year period, never prescribed Mr. Chaney medications or recommended treatment, and seems to have been hired for the purposes of litigation. Tr. 188-94; *see* 20 C.F.R. § 404.1502 (providing that a physician obtained solely "to obtain a report in support of [plaintiff's] claim for disability" is not a treating physician). Even if Dr. Wheelhouse were a treating physician, his July 2007 medical source statement suffers from the same inconsistencies and defects as Dr. Davidson's. The ALJ specifically indicated that he accorded Dr. Wheelhouse's July 2007 opinion "no weight" because of Mr. Chaney's "long absence of medical care," and the extent to which the opinion deviates from the progressing medical record.  (Tr. 17). The ALJ did not commit legal error in according no weight to Dr. Wheelhouse's treating source statement, and had "substantial evidence" for his finding.

        2.      Whether the ALJ committed legal or evidentiary error by failing to consider the vocational expert's opinion.

The ALJ did not commit  reversible error by failing to address the vocational expert's

opinion in his decision. In the Sixth Circuit, the vocational expert's role is to "[testify] *on the basis of* the claimant's 'residual functional capacity and....age, education, and work experience' and assess whether the claimant 'can make an adjustment to other work.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (emphasis added). The vocational expert's testimony "is directed solely to whether, given a claimant's age, experience, and education, along with the claimant's assessment of what he 'can and cannot do,' there exist a significant number of employment opportunities for him in the regional and national economy." *Id.* This determination, which takes place at the fifth step in the sequential evaluation process, is different from the determination of whether the claimant has the residual functional capacity to return to his past relevant work. In the fourth step of the sequential analysis, the ALJ is entitled to rely on the claimant's own description of his job duties. 20 CFR § 404.1520(b)(2). He "may" supplement the claimant's testimony with a vocational expert's opinion, but a vocational expert's testimony is not necessary. *Id.*

Plaintiff retained Ms. Stoller, a vocational expert, in 2004 for his Worker's Compensation claim. (Tr. 61-64). Ms. Stoller's assessment was based on the availability of employment opportunities "in Maury County and its surrounding cities" alone, and not on opportunity "in the national and regional economy." Tr. 63; *see* 20 CFR 404.1520(b)(2). Ms. Stoller's opinion was also based upon the assumption that Mr. Chaney could *not* perform at a "medium physical demand." (Tr. 62.) However, the Regulations require that a vocational expert consider the claimant's RFC *as determined by the Agency*, which, in this case, was "medium." Finally, because the ALJ concluded his inquiry at the fourth step of the sequential analysis, the availability of *other* work was not relevant to his determination. (Tr. 18). The ALJ was not

17

required to address Ms. Stoller's assessment in his opinion because her assessment was not

relevant to the issues of the claimant's case. Moreover, the government was not required to

submit any vocational evidence "to contradict the vocational analysis of Dana Stoller," as the

Agency bears no burden of production until the fifth step of the sequential evaluation process.

       3.      Whether the ALJ had substantial evidence for his assessment of Plaintiff's credibility.

Plaintiff argues that substantial evidence does not support the ALJ's discounting of

Plaintiff's testimony about the debilitating effects of his impairments. (Docket Entry No. 13, at

10). Specifically, Mr. Chaney testified that he cannot functionally sustain any type of work due

to his knee, hip, and back pain, and that his medication makes him drowsy. (Tr. 271, 273).

To assess the claimant's complaints of disabling pain, the ALJ must perform a two-part

analysis. *Id.* at 247 (citing 20 C.F.R. § 416.929(a)). First, the ALJ must ask whether the there "is

an underlying medically determinable physical impairment that could reasonably be expected to

produce the claimant's symptoms." *Id.* "[I]f the ALJ finds that such an impairment exists, then

[he must] evaluate the intensity, persistence, and limiting effects of the symptoms on the

individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his

evaluations include the claimant's daily activities; the location, duration, and intensity of the

symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and

side effects of any medication used to alleviate the symptoms; other measures taken to alleviate

the symptoms....and any other factors bearing on the [claimant's limitations]." *Id.* The ALJ must

consider the "entire case record" in assessing credibility, clearly explaining the weight and

reasons for his assessment. *Id.* at 247-48. In this case, even though the ALJ found that Plaintiff's

18

impairments would not reasonably be expected to produce the alleged symptoms, he nevertheless proceeded to evaluate the intensity and limiting effects of those symptoms. In the course of that analysis, the ALJ identified several grounds for disbelieving the Plaintiff's allegations about his symptoms.

Substantial evidence exists in the record to support the ALJ's finding that Mr. Chaney's testimony at the administrative hearing was "not credible." The ALJ provides four reasons to explain his credibility assessment. First, the ALJ points to the lack of "objective" medical evidence supporting Mr. Chaney's testimony about his limitations. (Tr. 16). Unlike conditions such as fibromyalgia, objective medical findings have played a larger role in evaluating pain complaints associated with degenerative joint disease and arthritis. *See, e.g.*, *Blacha v. Sec. Health & Human Servs.*, 927 F.2d 228, 230-31 (6th Cir. 1990) (using "objective medical evidence," finding that "[m]ild degenerative arthritis is not expected to produce disabling pain")(citing *Sizemore v. Sec. of* Health & Human Servs., 865 F.2d 709,713 (6th Cir. 1988)). To support his determination, the ALJ cites the range of motion that Mr. Chaney most recently exhibited in his injured nondominant shoulder, as well as the fact that the "weight of the documentation" assigns only limited restrictions to Mr. Chaney's shoulder. (Tr. 16). Also supporting the ALJ's determination is Dr. Wade's finding of "no motor loss, and no sensory loss," and "no atrophy" in March and April of 2007, which the ALJ also included in his opinion. Tr. 14, 199, 201; *see, e.g., Jones v. Sec'y of Health & Human Servs.,* 945 F.2d 1365, 1369-70 (6th Cir. 1991) (finding that reliable evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm, and sensory and motor disruption).

The ALJ also considered the lack of treatment that Mr. Chaney was receiving for his

19

alleged knee, hip, back, and shoulder pain. (Tr. 16). In the Sixth Circuit, a claimant's failure to seek treatment and take available medication can support an ALJ's adverse credibility finding. *See, e.g.*, *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106 (6th Cir. 1989) (finding that the claimant's use of mild pain medications was inconsistent with the claimant's allegations of severe pain); *Donegan v. Sec'y of Health & Human Servs.*, 1993 U.S. App. LEXIS 20055, at *16 (6th Cir. Aug. 2, 1993) (finding that the claimant's use of only mild medications and failure to seek treatment supported the ALJ's adverse credibility finding). In this case, Mr. Chaney testified that he was not receiving any treatment for his back, shoulder, or knee at the time of the hearing, even though Mr. Chaney has responded positively to medications and treatment in the past. (Tr. 16). The ALJ also observed that Mr. Chaney had "meaningful access" to medications, and that "the medical records do not document significant side effects." *Id.* Dr. Davidson's treatment notes indicate trouble with certain medications in 2003 and 2004, but there is nothing in Dr. Davidson's record about Mr. Cheney's ability to tolerate knee, hip, and back pain medications. (Tr.203-30).  In fact, Dr. Davidson indicated in his treatment notes that Mr. Chaney was having positive responses to Darvocet, the medication which he was most recently prescribed. (Tr. 203-04). In Dr. Wheelhouse's July 18, 2007 examination of Mr. Chaney, Dr. Wheelhouse noted that Dr. Davidson had recently prescribed Darvocet and Celebrex, but that Mr. Chaney was currently taking no medication. (Tr. 188). The record indicates that Mr. Chaney did not complain of any side effects when Dr. Wheelhouse examined him.

Third, the ALJ found that the fact that Mr. Chaney was drawing unemployment for twenty-six weeks after the alleged disability onset date diminished Mr. Chaney's credibility. (Tr. 16). The Sixth Circuit has held that applications for unemployment benefits are "inherently

inconsistent" with disability benefits, and can provide a "good reason" for an adverse credibility

finding. *Workman v. Comm'r of Soc. Sec*, 2004 U.S. App. LEXIS 15883, at \*21-22 (6th Cir. July

29, 2004) (citing *Kinsella v. Schweiker*, 708, 1059 (6th Cir. 1983); *Bowden v. Comm'r of Soc.

Sec*., 1999 U.S. App. LEXIS 1570, at \*7 (6th Cir. Jan. 29, 1999). There is "no explanation for

how a person can claim disability benefits under the guise of being unable to work, and yet file

an application for unemployment benefits claiming that [he] is ready and willing to work." *Id*;

*see also Allen v. Apfel*, 2001 U.S. App. LEXIS 1893 (6th Cir. Jan. 23, 2001) (finding

unemployment benefits to be inconsistent with disability benefits, no matter the reason for

drawing unemployment). Recognizing the "[inherent] inconsistency" in applying for both

unemployment benefits and disability benefits at the same time, the ALJ appropriately

appropriately cited this as a reason for his credibility finding. (Tr. 16).

Finally, the ALJ was clearly troubled by what he viewed as the Plaintiff's lack of candor

while testifying, noting that Mr. Chaney "changed his story" with respect to the unemployment

issue "[a]fter being presented with the facts." (Tr. 16). In evaluating complaints of disabling

pain, an ALJ may properly consider the claimant's credibility. *Walters*, 127 F.3d 525 at 531.

Although Plaintiff points out that this discrepancy was an "honest" mistake, the ALJ's

assessment is entitled to great weight and deference, since he had the opportunity to observe the

claimant's demeanor while testifying. *Id.* Even though Mr. Chaney's substantial prior work

history and unsuccessful return to work in 2004 would tend to support a finding of good

credibility, the ALJ had ample reasons supporting his adverse credibility finding. *White v.

Comm'r of Soc. Sec*., 2009 U.S. App. LEXIS 4181, at \*27 (6th Cir. Feb. 24, 2009) (citing Soc.

Sec. Rul. 96-7p, 1996 SSR LEXIS, at \*4). The ALJ's reasons, including the lack of objective

21

medical evidence, Mr. Cheney's lack of treatment, his lack of candor, and his application for unemployment benefits are sufficiently "good reasons" for the ALJ's adverse finding. The ALJ did not commit reversible error in finding that Mr. Chaney's testimony was not credible.

       4.     Whether this court has the authority to change the onset date for disability benefits.

Finally, the Plaintiff asks this Court to change the onset date for disability benefits to July 27, 2007 if it finds that the ALJ had "substantial evidence" for his determination. (Docket Entry No. 13, at 12). However, in evaluating an ALJ's disability determination, a district court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court reviews the entire record for substantial evidence, and "may not base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence." *Id.* at 388. Changing the onset date would be consistent with *de novo* review, and not the highly deferential "substantial evidence" standard. Accordingly, the district court may not change the disability onset date to July 27, 2007, which was not alleged before the ALJ. This case should not be remanded to the ALJ for further proceedings because the ALJ had substantial evidence for his determination, and did not commit any legal errors.

## IV.    Recommendation

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's motion for judgment upon the administrative record be DENIED.

Any party has ten (10) days from the receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing the objections shall have ten (10) days from receipt of any objections filed in which to file any responses to the objections. Failure to file specific objections within ten (10) days of receipt can

22

constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140

(1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).


ENTERED this 21st day of July, 2009.


s/John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE